FIRST NATIONAL BANK OF BINGHAMTON, Plaintiff, *v.* THE CITY OF BINGHAMTON, Defendant.

*Taxation of banks — from what assessment they are exempted by chapter 550 of the Laws of 1901.*

It was the purpose of the Legislature in enacting chapter 550 of the Laws of 1901, which amended section 24 of the Tax Law (Laws of 1896, chap. 908), by changing the method of taxing bank stock, and provided, "All assessment of the shares of stock of banks and banking associations made on or after January first, nineteen hundred and one, and prior to the passage of this act, shall be null and void, and new assessments thereof shall be made agreeably to the provisions of this act," to substitute the new liability for the old as of January 1, 1901, and to relieve the stockholders of a bank from all liability after that date under any other law, although the act of 1901 may not have taken effect until after the final revision of the assessment roll under which such liability might arise.

SUBMISSION of a controversy upon an agreed statement of facts, pursuant to section 1279 of the Code of Civil Procedure.

*Harvey D. Hinman,* for the plaintiff.

*Frank Stewart,* for the defendant.

SMITH, J.:

Plaintiff here seeks to recover from the defendant the sum of $4,786.18 paid by plaintiff's assignors upon an assessment for city taxes in the year 1901. These taxes were concededly paid under duress if their exaction was illegal, and the sole question for our determination here is whether the stockholders of the plaintiff bank were liable under the law to pay the city tax of 1901.

Upon April 25, 1901, chapter 550 of the laws of that year became effective. That act assumes to amend the Tax Law of the State (Laws of 1896, chap. 908, § 24) by changing the rule of taxation upon the shares of stock of banks and banking associations. Under that act the value of the shares of stock is to be ascertained by adding together the amount of the capital stock, surplus and undivided profits, and by dividing the result by the number of outstanding shares. The rate of tax is then fixed at one per cent upon such value, and it is provided that such tax shall be in lieu of all other taxes whatsoever for State, county or local

purposes upon said shares of stock. It is further provided that the boards of supervisors of the several counties shall, on or before the fifteenth day of December in each year, mail to the president or cashier of said banks a statement containing the assessed value of the said shares and the aggregate amount of tax to be collected thereupon. This tax the bank is required to pay within fifteen days after the receipt of the said statement. The act further provides: "All assessment of the shares of stock of banks and banking associations made on or after January first, nineteen hundred and one, and prior to the passage of this act, shall be null and void, and new assessments thereof shall be made agreeably to the provisions of this act."

After the passage of the act the city tax for the fiscal year beginning the 1st day of July, 1901, was levied upon the shares of stock of the plaintiff bank and was paid under protest and duress. The defendant claims that while the taxes for State and county expenses are payable in December, and those for city purposes in July, one assessment only is made therefor, which assessment was made and completed before the 1st day of January, 1901, and that, therefore, the tax was lawfully exacted. The contention of the plaintiff is that said tax was assessed after the 1st day of January, 1901, and that, therefore, the city was unauthorized to collect the same, and the stockholders having paid the same under duress, are entitled to its return.

This case is nearly akin to the case of the *Binghamton Trust Co.* v. *City of Binghamton* (72 App. Div. 341). Reference is made to the opinion in that case. The statute here, as there, is one not of exemption, but one which, if construed as defendant desires, would result in double taxation of plaintiff. The inquiry here, as there, is to ascertain the real intent of the statute. In that case the act (Laws of 1901, chap. 132) became effective in March, before the April revision. In this case the act became a law upon the twenty-fifth of April, after the revision of the tax roll. In this act, however, is found the provision that all assessments of shares of stock made on or after January 1, 1901, and prior to the passage of the act, shall be null and void. The word "assessment" has a double significance. It may mean the appraisement of property for the purpose of taxation, or it may mean the apportioning of the tax to

the taxable property. This double significance is recognized by all lexicographers and in the statutes. In the defendant's charter (Laws of 1888, chap. 214, tits. 4, 6, as amd.), as set out in the opinion in the *Trust Company* case, the word is used both in the sense of an appraisement or valuation of property for the purpose of taxation and of the apportionment to the taxable property of the tax to be assessed. Under the defendant's charter an assessment in the sense of an apportionment of the tax to the taxable property on the roll could have been made after the April grievance day and before the passage of the act. To provide against such an assessment, as well as any other assessment which might have been made meantime, was, I think, in contemplation of the Legislature when this provision of law was enacted. From the whole statute the scheme is apparent to substitute the new liability for the old, as of January first, and to relieve the plaintiff's stockholders from all liability after January first under any other law. With this scheme manifest, the statute is self-executing, and operates to take the property from the roll and avoid any assessment made.

The plaintiff claims as assignee of the several stockholders, and no question is made of the right to recover the amount claimed under the interpretation of the statute found.

Judgment should, therefore, be ordered for the plaintiff against the defendant for the sum of $4,786.18, with costs.

All concurred.

PARKER, P. J. (concurring):

I concur in the conclusion reached in this case. I do not do so upon the ground that plaintiff was assessed between January 1 and April 25, 1901, for the taxes which it seeks to recover back, because I am of the opinion that such assessment was completed on October 1, 1900; but I do so upon the ground that the Legislature intended to give the act of April 25, 1901, a retroactive effect so as to avoid all assessments of taxes that were to be collected for the year beginning January 1, 1901. The language is not very apt to express that idea, but it indicates a purpose to exempt some assessments made prior to the passage of the act, and it is hardly to be supposed it intended to exempt those assessments made between January 1 and April 25, 1901, and include those which, although made

before January first, were to be collected and appropriated to the expenses of 1901. This plain effort to declare some assessments void may very well be held to include all assessments upon which the taxes levied for the purposes of 1901 were based.

In view of such provision and to avoid double taxation, I conclude that it is reasonable to ascribe such an intent to this act.

⁻ Judgment ordered for the plaintiff for the sum of $4,786.18, with costs.