Matter of Wortman (2024 NY Slip Op 24303)

[*1]

Matter of Wortman

2024 NY Slip Op 24303

Decided on December 2, 2024

Surrogate's Court, Monroe County

Ciaccio, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 2, 2024
Surrogate's Court, Monroe County

In the Matter of the Petition for a Proceeding to Determine Validity and Enforceability of a Claim, Estate of Morris Wortman, Deceased.

File No. 2023-1578/D

Kathryn L. Bruns, Esq., Rochester, New York, Attorney for Morgan Hellquist, Claimant.
Myles B. Fischer, Esq., Harris Beach, PLLC, Albany, New York, Attorneys for Edward Bloom, Successor Executor of the Estate of Morris Wortman, and Karen A. Cancelmi, Executor of the Estate of Rebecca Privitera Wortman.
David C. Sieling, Esq., Brenna Boyce PLLC, Honeoye Falls, New York, Attorneys for Alyssa Montgomery.
Benjamin S. Cranston, Esq., Phillips Lytle LLP, Buffalo, New York, Attorneys for Christopher Muench and Brian Muench.
Christopher J. O'Brien, Esq., Amherst, New York, Attorney for Mary Muench.
Stephen G. Schwarz, Esq., and Kristin Merrick, Esq., Faraci Lange, LLP, Rochester, New York, Attorneys for Morgan Hellquist, Claimant.
David A. Johns, Esq., Pultneyville, New York, Attorney for Alyssa Montgomery.

Christopher S. Ciaccio, S.

This is a proceeding pursuant to SCPA § 1809 "to determine validity and enforceability" of a claim made by Morgan Hellquist ("Morgan") against the Estate of Morris Wortman. The claim represents a settlement of a civil action Hellquist brought against Morris Wortman ("Wortman") and his medical practice while he was alive, and the action continued against his Estate until it was settled. 
For the reasons below, the claim is verified and deemed enforceable, however, while the court will remove the limitations on the letters and the fiduciary can distribute the funds in the estate to satisfy the claim, it remains the responsibility of the fiduciary whether to make such distribution, that is, to make decisions about which claims to pay and/or not to pay or to pay, especially in this case, in which there are two other filed claims arising out of Wortman's practice of medicine that have not been resolved. 
BACKGROUND AND PRIOR PROCEEDINGS
Wortman was licensed to practice medicine in New York and, among other things [FN1]
 operated something called the Center for Menstrual Disorders, essentially, a fertility clinic. It [*2]was a regular part of his practice to perform an artificial insemination procedure on women who were unable to get pregnant. He represented, in at least the case of the parents of Morgan Hellquist, that he would use the sperm of a donor. 
That was a lie. He used in this case and was using in many other cases (including that of one of the other filed claims), his own sperm.
Thus, Morgan alleges that Wortman had used his own sperm to inseminate her mother and lied to her about it. Worse, perhaps, Morgan went to him for treatment for ongoing gynecological problems, not knowing that he was the sperm donor.
After commencement of the action, Wortman died. His wife was appointed executor in July 2023 and limited letters were issued, which provided that the fiduciary was required to return to Surrogate's Court for approval of an "allocation and distribution of any recovery in wrongful death," and that the fiduciary was not to make "any distribution of assets of the estate to any distributees without an order of this court."
On August 23, 2023, the fiduciary Rebecca Wortman petitioned the Surrogate's Court for "Advice and Direction" to determine 1) whether petitioner has the authority to transfer certain business assets owned by the practice to the University of Rochester Medical Center; 2) the extent to which the limitations restrict the distribution of non-probate assets and 3) if there is a restriction, whether the petitioner may post a bond in the amount of $500,000 in exchange for the removal of the limitations in the Court's Decree and Letters Testamentary.
In September 2023 attorney David Johns filed on behalf of his client Alyssa Montgomery a Notice of Appearance and Admission of Service of the Petition for Advice and Direction. She alleges that she was negligently treated by Wortman - i.e., he committed medical malpractice - resulting in "catastrophic" injuries.
On October 3, 2023, attorney Tara Ward filed a Notice of Appearance on behalf of her clients Chris and Brian Muench.
By Order dated October 6, 2023, the Court directed among other things, 1) Rebecca Privitera Wortman, as Executor of the Estate of Morris Wortman, to obtain a surety bond in the sum of $2,000,000.00; 2) allowing distribution of non-probate assets, and (3) a briefing schedule for objections to the Petition for Advice and Direction dated August 23, 2023. Additionally, the court ordered that objections to the "Advice and Direction" petition be filed by November 16, 2023, and that argument take place on December 5, 2023.
An Answer /Objections on behalf of Brian and Christopher Muench was filed on November 16, 2023, opposing any distribution of estate assets.
An Answer/Objections on behalf of Alyssa Montgomery was filed on November 17, 2023, also opposing any distribution of estate assets. 
Following discussions among counsel for the fiduciary and Hellquist, the action against the Estate was settled for a confidential amount, and counsel for the Estate drafted and submitted to the court in November 2023 for its approval a "Consent Order," which included the following language at the Court:
ORDERED AND DECREED that the distribution of assets from the Estate of Morris Wortman is hereby authorized and approved to satisfy the terms of the Settlement Agreement; and, it is further, The court took no action on the proposed "Consent Order."
Subsequently, the Estate withdrew its Petition for "Advice and Direction" on the record on December 5, 2023.
Morgan then filed a Verified Claim on December 8, 2023; the amount, while certain, was (and is) confidential and was not set forth in the claim.
A Verified Claim was filed on December 6, 2023, by Mary Muench, "in an amount to be determined."
Alyssa Montgomery filed a Verified Claim on December 8, 2023.
On February 28, 2024, Edward Bloom was appointed Successor Executor of the Estate of Morris Wortman following the death of former Executor Rebecca Privitera Wortman.
Morgan then brought the instant proceeding pursuant to SCPA 1809 on May 21, 2024, alleging that the Executor had not yet accepted the claim, and that more than 90 days had passed since the presentation of the claim.
To date, no objections have been filed in response.
SCPA 1809, entitled "Proceeding to determine validity and enforceability of claims," provides that "any claimant whose claim is made in compliance with 1803, and whose claim has not been allowed in whole pursuant to 1806 may petition the court showing the facts and praying that the fiduciary be required to show cause why the claim should not be allowed."
Both conditions have been met. The claim was presented in compliance with SCPA 1803, and the fiduciary in effect rejected the claim, because it did not allow the claim within 90 days of the day it was presented (see SCPA 1806 [3]).
As no objections have been filed to the Petition, the claim is valid and enforceable. Even if objections had been filed, the claim would still be deemed valid and enforceable. Claimant has provided a General Release executed by the then-executor of the Estate.
The more pertinent and more difficult question is whether the court has a role to play in whether the claim should be paid immediately. Clearly, it does not. It is for the fiduciary to decide whether to pay the claim now or to wait until all claims against the Estate of Morris Wortman are known, i.e., upon a petition for judicial settlement. The fiduciary is responsible for paying expenses and debts in accordance with SCPA 1811, and it is for the fiduciary to decide whether, in paying the claim, there will be enough money left over to pay those priority expenses and debts. 
Judgments are third in the order of priority of payment; however, Morgan has so far declined to enter a judgment in the amount of the settlement, partly out of confidentiality, and partly because the General Release provides that there shall be no payment until the court authorizes release of the money.
The Commentary to SCPA 1809, written by Margaret Turano, states that "The purpose of this section is simply to determine whether a claim is valid. See Matter of Riconda, 90 NY2d 733, 665 N.Y.S.2d 392, 688 N.E.2d 248 (1997) (court remanded case to Surrogate's Court with directions to ascertain what parties meant in separation agreement, not to assess fairness of agreement, effect equitable distribution or redistribute parties' wealth)" (Margaret Valentine Turano, Prac Commentaries, McKinney's Cons Laws of NY, SCPA 1809 [2011]).
The Commentary also makes the point, which is explicit in the statue, that a proceeding pursuant to SCPA 1809 is a "preliminary step in the accounting proceeding."
Notwithstanding, that section also authorizes the court to "make such direction as justice shall require." 
Since no objections to the application have been filed by any interested party, the court, [*3]in addition to validating the claim and its enforceability, also authorizes the fiduciary to pay the claim now, dependent only upon the fiduciary's exercise of his responsibility to ensure that other estate expenses are covered, such as funeral expenses, attorneys' fees and the other debts entitled to priority set forth in SCPA 1811.
It is not the court's responsibility to determine the appropriateness of present payment of this claim, in advance of the settlement of the other claims that have been filed (see Estate of Rothko, 84 Misc 2d 830, 840 [Sur Ct 1975] [" surrogates do not usually give advance approval concerning matters of business judgment which are within the province of executors,"]; decree mod sub nom. Will of Rothko, 56 AD2d 499 [1st Dept 1977], affd sub nom. Matter of Rothko's Estate, 43 NY2d 305 [1977]:
Alyssa Montgomery has commenced an action in supreme court and filed a claim here in Surrogate's court, each arising out of medical malpractice. Damages are alleged to be in the millions of dollars. Insurance provides coverage of 1.3 million. Additional coverage may or may not be available through Rochester Regional Health. 
The Muench claims have not, in any way known to this court, been advanced.
As with petitions for "Advice and Direction," the court needs to be careful to avoid making "business judgments "which are the province of the fiduciary, as opposed to "legal considerations" (see Estate of Jack Goldstein, NYLJ Mar 23, 1999 at 32, col 2; 1999 NYLJ LEXIS 735 [Sur Ct, New York County 1999]).
The courts have neither the duty nor the authority to exercise the business judgment which is imposed on fiduciaries (City Bank Farmers Trust Co v Smith, 238 AD 742 [1st Dept 1933]). Moreover, whether to pay a claim is a "fiduciary act for which the fiduciary will be held accountable in the accounting proceedings" (see In re Gregory's Estate, 102 Misc 2d 735, 737, [Sur Ct Westchester County 1980]).
But to be clear, the court lifts the limitations in the letters, and the executor can proceed to pay the claim if deemed appropriate. It does not order payment or give its imprimatur if payment is made. 
Counsel for claimant Morgan Hellquist shall file a proposed Order.
Dated: December 2, 2024
Rochester, New York
Hon. Christopher S. Ciaccio
Surrogate's Court Judge

Footnotes

Footnote 1:He was also one of the most prolific abortionists in the Rochester area.